```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
THE CITY OF NEW YORK,

                        Plaintiff,
        - against -                        06 Civ. 6578 (NRB)

                                           MEMORANDUM AND ORDER
NATARAJAN VENKATARAM, ROSA ABREU,
VISUALSOFT TECHNOLOGIES, LTD., and
D.V.S. RAJU,

                        Defendants.
----------------------------------------X
```

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On July 7, 2009, this Court granted summary judgment in favor of the City of New York (the "City") against Natarajan Venkataram (the "defendant"), awarding the City $8,074,193.99 in damages (the "judgment") on its claims that defendant embezzled funds from the Office of the Medical Examiner of the City that were intended for recovery efforts in the wake of September 11th, a crime for which he was earlier prosecuted and sentenced to a cumulative prison term of 180 months.  See City of New York v. Venkataram, No. 06 Civ. 6578 (NRB), 2009 WL 1938984 (S.D.N.Y. July 7, 2009), aff'd, 396 F. App'x 722 (2d Cir. 2010).

On June 6, 2011, $232,630.00 held by the State Bank of India in defendant's name was transferred to the City in partial satisfaction of the judgment.  No further funds have been recovered by the City in the interim.  However, the City has

formed a good-faith belief that several hundred thousand dollars remain held by the State Bank of India in defendant's name.  On November 21, 2011, this Court issued an order pursuant to C.P.L.R. § 5225(a) requiring defendant to execute a "Release of Funds" as well as any other documents necessary for the State Bank of India to turn over all funds held in defendant's name up to the amount necessary to satisfy the remainder of the judgment (the "Turnover Order").[1]  To date, defendant has not executed this release or any other documents.  See Pl.'s Mem. of Law in Supp. of Its Mot. for Contempt and for Relief Pursuant to Fed. R. Civ. P. 70(a) 2.  Consequently, on May 25, 2012, the City filed a motion for civil contempt and relief pursuant to Federal Rule of Civil Procedure 70(a).  See id.

In addition, defendant has failed to respond to the City's requests for post-judgment discovery sought pursuant to Federal Rule of Civil Procedure 69 and served on March 2, 2012.  See Pl.'s Mem. of Law in Supp. of Its Mot. to Compel and for Sanctions Pursuant to Fed. R. Civ. P. 37 ("Rule 37 Br.") 1.  Specifically, the City served defendant with four multipart interrogatories regarding the source, nature, and transfer of defendant's assets, requesting his responses by April 5, 2012.  Id. at 2.  When defendant failed to provide any responses, the City sent defendant a letter, dated April 17, 2012, demanding

---

[1] On December 12, 2011, we denied defendant's motion for reconsideration of the Turnover Order.  On January 12, 2012, defendant appealed.

responses by April 25, 2012 and informing defendant of the City's intention to seek judicial intervention should he not comply. Id. at 3. Defendant, however, has responded neither to the interrogatories nor to the City's correspondence. Id. Accordingly, on May 25, 2012, the City filed a motion to compel and for sanctions pursuant to Federal Rule of Civil Procedure 37. See id.

In response to the motions filed on May 25, 2012, defendant has submitted a separate motion for a stay of the Turnover Order pending both his appeal of that decision and resolution of what defendant characterizes as "related litigation" involving his underlying criminal conviction. See Def.'s Mot. for Stay ("Def.'s Mot.") 1.

Thus, there are three motions pending before us. We address them in reverse order.

*        *        *

First, we deny defendant's motion for a stay. In deciding whether to exercise our discretion and issue a stay pending appeal, we consider four well-established factors: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" In re

World Trade Center Disaster Site Litig., 503 F.3d 167, 170 (2d Cir. 2007) (quoting Hilton v. Braunskill, 481 U.S. 770, 776 (1987)).

We agree with the City that defendant has offered no compelling arguments in support of his request for a stay. Despite his assertions to the contrary, defendant's chances of success on appeal are minimal. Even assuming that defendant could establish, as he intends to argue, that the amount of restitution ordered as part of his criminal sentence was incorrect, see Def.'s Letter of May 17, 2012, he is so far from satisfying the judgment entered against him in this case--which was admittedly premised on that restitution order--that we highly doubt whether any conceivable diminution of the judgment could ever place defendant in the position of being owed a "refund." Moreover, the City rightly observes that, in the unlikely event that defendant finds success in his appeal, any amount of funds transferred pursuant to the Turnover Order could easily be returned without irreparable harm to defendant. See Pl.'s Mem. of Law in Opp'n to Def.'s Mot. for a Stay ("Pl.'s Opp'n") 6. By contrast, permitting defendant to continue to frustrate recovery of the embezzled funds seriously prejudices the City and harms the public interest. Therefore, defendant's motion for a stay is denied.

Second, we grant the City's motion for an order compelling responses to its interrogatories. Federal Rule of Civil Procedure 69 "clearly entitles a judgment creditor to utilize the full panoply of federal discovery measures, [namely] Rules 26-37," in aid of executing a money judgment. Magnaleasing, Inc. v. Staten Island Mall, 76 F.R.D. 559, 561 n.1 (S.D.N.Y. 1977). Federal Rule of Civil Procedure 37, in turn, enables a court to "compel[] an answer" when "a party fails to answer an interrogatory submitted under Rule 33." Fed. R. Civ. P. 37(a)(3)(B)(iii). In light of defendant's failure to provide any response to the City's interrogatories, defendant is ordered to answer those interrogatories within ten days of his receipt of this Memorandum and Order.

In its letter of April 17, 2012, the City informed defendant of its intent to seek an award of its attorney's fees should he not provide responses to the interrogatories previously served upon him. See Proshansky Decl. in Supp. of Mot. to Compel and for Sanctions Pursuant to Fed. R. Civ. P. 37 ("Proshansky Decl.") Ex. 2. In its moving papers, the City has duly sought an award of its attorney's fees as a sanction for defendant's noncompliance pursuant to Rule 37(d)(3), which provides in relevant part that "[i]nstead of or in addition to the[] sanctions [listed in Rule 37(b)(2)(A)(i)-(vi)], the court must require the party failing to act . . . to pay the

reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3) (emphasis added). We agree with the City that the non-monetary sanctions set out in Rule 37(b)(2)(A) are largely inapplicable to the post-judgment setting here. See Rule 37 Br. 4. We also find that defendant's failure to answer the interrogatories and indeed to respond at all to the subsequent letter of counsel for the City was not substantially justified and that an award of expenses is not otherwise unjust.[2] Accordingly, we award the City its reasonable attorney's fees of $1275.00 incurred as a result of defendant's noncompliance and further order defendant to pay the City this amount.[3]

Third, we grant the City's separate motion for an order finding defendant in civil contempt for his failure to comply with the Turnover Order. At the outset, we emphasize that the existence of a pending appeal does not divest this Court of

---

[2] In its moving papers and in a supporting declaration, the City states that two of its attorneys, Eric Proshansky and Leonard Braman, expended one-and-a-half (1.5) and three (3) hours, respectively, as a result of defendant's noncompliance. The City requests reimbursement at a rate of $350.00 per hour for Mr. Proshansky and $250.00 for Mr. Braman, which we find are reasonable hourly rates in light of their relative experience. See Proshansky Decl. ¶¶ 7-10; Rule 37 Br. 3-5. See Adams v. N.Y. State Educ. Dep't, 630 F. Supp. 2d 333, 347-351 (S.D.N.Y. 2009) (finding $350.00 was a reasonable hourly rate for senior counsel in New York City Law Department).

[3] At this time, we decline to impose the award of fees as a lien on defendant's prison account, as the City requests. See Rule 37 Br. 5. However, we place defendant on notice that if he fails to provide answers to the pending interrogatories, as we have ordered, then his failure could result in, inter alia, the imposition of further monetary sanctions against him, which we may impose as a lien on his prison account.

6

jurisdiction to enforce its judgments to the fullest extent. See United States v. Pescatore, 637 F.3d 128, 144 (2d Cir. 2011) (stating "[i]t is 'a basic proposition that all orders and judgments of courts must be complied with promptly'" before elaborating "'[i]f a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal'") (quoting Maness v. Meyers, 419 U.S. 449, 458 (1975)) (emphasis omitted); Red Ball Interior Demolition Corp. v. Palmadessa, 947 F. Supp. 116, 120-21 (S.D.N.Y. 1996), aff'd, 107 F.3d 4 (2d Cir. 1997) ("notice of appeal does not deprive this [c]ourt of jurisdiction to entertain [a] contempt motion" because "a district court remains vested with the ability to enforce an order, even while the order is sub judice before the reviewing court"); In re Prudential Lines, Inc., 170 B.R. 222, 243-44 (S.D.N.Y. 1994) ("while an appeal of an order or judgment is pending, the court retains jurisdiction to implement or enforce the order or judgment"). See also In re Gushlak, No. 11 Misc. 218 (NGG), 2012 WL 2564523, at *3-4 (E.D.N.Y. July 2, 2012) (sanctioning attorney who advanced argument that district court was divested of jurisdiction to enforce its order pending appeal of that order). Thus, we retain here our general authority to hold a party in civil contempt for failure to comply with an order where "(1) the order the contemnor failed

7

to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." King v. Allied Vision, Ltd., 65 F.3d 1051, 1058 (2d Cir. 1995). Upon a finding that a party is in civil contempt, this Court then retains "broad discretion to fashion an appropriate coercive remedy . . . based on the nature of the harm and the probable effect of alternative sanctions." Equal Employment Opportunity Comm'n v. Local 28 of the Sheet Metal Workers Int'l Assoc., 247 F.3d 333, 336 (2d Cir. 2001) (ellipsis in original); see also Perfect Fit Indus., Inc., v. Acme Quilting Co., Inc., 673 F.2d 53, 56-57 (2d Cir. 1981) (noting that a sanction for civil contempt may serve either or both of two purposes--to coerce or to compensate--and stating when "the purpose is coercive, the district court has broad discretion to design a remedy that will bring about compliance").

The Turnover Order requires defendant to execute a release and forward it, along with "any and all other documents that [the State Bank of India] may require to release funds in [defendant]'s accounts[,] to the City." Turnover Order 2. The Turnover Order is thus "clear and specific" and can have left "no uncertainty in the mind[] of [defendant]." Hess v. N.J. Transit Rail Operations, Inc., 846 F.2d 114, 116 (2d Cir. 1988). His noncompliance is likewise patent--he has not executed the

8

release or any other document in the seven months since his receipt of the Turnover Order.  Lastly, defendant has offered no evidence to show that he has ever attempted to comply with the Turnover Order or has been in any way frustrated from doing so.  Even were we to credit defendant's assertion that he mistakenly believed his appeal from the Turnover Order operated as a de facto stay, see Def.'s Mot. 2, the coercive sanction that we have tailored will not commence until ten days after defendant's receipt of this Memorandum and Order, as described below, affording him ample opportunity to execute the release and remain free of any consequences whatsoever for his noncompliance.

In selecting a sanction that will coerce defendant's compliance with the Turnover Order, we are mindful of the historical pattern of his efforts to thwart the City's recovery of the embezzled funds through delay and even deception.  See City of New York v. Venkataram, No. 06 Civ. 6578 (NRB), 2011 WL 2899092, at *5 (S.D.N.Y. July 13, 2011) (noting "[defendant's] submissions to this Court in connection with [a prior] motion [bearing on recovery of the embezzled funds] have ranged from contradictory to misleading").  In light of defendant's proven unwillingness to cooperate in the collection of the judgment against him, we perceive that the threat of additional fines merely accruing on top of the millions of dollars for which he

9

is already liable is certain to prove an ineffective coercive measure. In light of our extensive experience with defendant and his machinations, we find that for a sanction short of further imprisonment to have any coercive effect on him whatsoever it must be a fine that attaches to and deprives him of funds currently available for his daily use in prison. See Stimac v. U.S. Dep't of Justice, 917 F.2d 1306, 1990 WL 169583, at *3 (7th Cir. Nov. 2, 1990) (unpublished decision) (enjoining a prisoner "from filing future repetitious and frivolous actions" and warning him that "[v]iolation of the terms of this injunction may lead to a finding of contempt and may result, for example, in a monetary penalty on funds held in [his] prison trust fund account"); Leary v. Livingston Cnty., No. 03-6021, 2006 WL 1547761, at *1 (E.D. Mich. May 31, 2006) (Pepe, Mag. J.) (warning prisoner that his failure to obey order to cooperate with deposition in civil proceedings may result in a finding of contempt with "financial liability imposed and his prison account garnished"). Cf. Johnson v. Henderson, 67 F.3d 299, 1995 WL 579441, at *3 (6th Cir. Sept. 28, 1995) (unpublished opinion) (affirming district court's imposition of lien against indigent plaintiff's prison account for costs awarded to defendants).

Accordingly, we find defendant in civil contempt and order that should he fail to comply with the Turnover Order within ten

days of his receipt of this Memorandum and Order he shall be fined $50.00 per day thereafter, which fine will be imposed as a lien on any prison account balance over $25.00.[4]

Dated:   New York, New York
         July 17, 2012

*(signature)*
NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

---

[4] Insofar as the City's motion seeks relief pursuant to Federal Rule of Civil Procedure 70(a) and an award of its attorney's fees, it is denied without prejudice to its subsequent renewal.

11

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:

<u>Attorney for the City</u>:
Eric Proshansky, Esq.
New York City Law Department
100 Church Street, Room 20-99
New York, NY 10007

<u>Pro Se Defendant</u>:
Natarajan Venkataram
Fed. Reg. No. 58513-054
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, NJ 08640